## City of Mayfield v. Hamlett.

(Decided November 30, 1928.)

AUBREY HESTER for appellant.

ROBBINS & SMITH for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—
Reversing.

On July 22, 1927, the appellee, while attempting to cross from the sidewalk at the northwest corner of South and Fifth streets, to her place of employment in the city of Mayfield, fell and sustained a serious injury to her ankle. She thereupon instituted this action against the city to recover damages. The negligence complained of was alleged to be the failure of the city to properly construct, reconstruct, and maintain the street, sidewalk, curb, and gutter at the place where she fell; its failure to keep the same in repair; and its negligence in allowing the sidewalk, curb, and gutter to be and remain in a dangerous and unsafe condition at the time of her injury and for many months prior thereto, which condition it is alleged was known to the city, or could have been known to it by the exercise of ordinary care. The answer of the city contains a traverse of the petition and, in addition, a plea of contributory negligence on the part of the appellee.

Upon the trial there was a verdict for appellee in the sum of $3,000, for which judgment was rendered, and the city has appealed.

A number of grounds for reversal are urged by the appellant, but most stress is laid upon the failure of the court to sustain its motion for a peremptory instruction made at the conclusion of plaintiff's evidence, and then overruled, and again made at the conclusion of all the evidence; and, since the consideration of this ground and the conclusions we have reached with regard to it disposes of the case, the other grounds urged need not be considered.

The evidence discloses that the appellee was 40 years of age, weighed 160 pounds, and was, at the time of her injury, and had been for 17 years prior thereto, an employee of the Merit Manufacturing Company, whose plant was just opposite the place where she sustained the injury complained of; that for 4 weeks prior thereto she had resided in the home of a Mrs. Mason, situate on the lot at the northwest corner of South and Fifth streets, and abutting the street intersection at which she sustained the injury. About a year prior to her injury the city had reconstructed and paved both South and Fifth streets, and at the point of intersection had lowered the grade of both streets to such an extent that the sidewalk

was 58 inches higher than the grade of the street; in other words, there was an abrupt descent of 58 inches from the sidewalk to the street level; but between the level of the sidewalk and that of the street there was a joint of glazed sewer pipe, part of an abandoned sewer embedded in the ground, 16 inches below the level of the sidewalk, and 19 inches below the joint of sewer pipe there was a piece of sheet steel sticking up through the surface of the ground just above the street curbing. In attempting to get down from the sidewalk to the street level, appellee placed her right hand against a telephone pole standing at the corner, then reached down with her left foot this 16 inches to the top of the sewer pipe, from which her foot slipped when the weight of her body was placed upon it, and caught on the piece of sheet steel 19 inches lower down, where the heel of her shoe was torn off, and she was thrown on her back and side, sustaining what the doctors who testified say is ''Potts'' fracture of her ankle. Appellee had been traveling from the Mason residence to the plant of the Merit Manufacturing Company back and forth twice each day during the 4 weeks she had resided in the Mason home, and had never before attempted to descend from the sidewalk to the street at this corner, but had previously descended to the street level either by going out of the rear of the Mason lot to a driveway and down that driveway to the street, or by going down a set of steps south of the intersection to the street level. The injury complained of occurred about 7 o'clock in the morning, and, in telling how it happened, appellee testified as follows:

"Q. When you came to the corner where this accident occurred, will you tell the court and jury what you did in going down that place from the walk to the street to insure your not falling as you descended from the walk to the street—what precaution did you use?

"A. I put my right hand against the telephone post.

"Q. Where is that post with reference to the corner?

"A. It is right there by the steps and right by the walk.

"Q. On the right hand of the steps or left as you go east?

"A. Right hand side.

"Q. Then the hand you put on the post was your right hand?

"A. Yes, sir.

"Q. Which foot did you step down off the pavement with first?

"A. Left foot.

"Q. How far is it from the top of that pavement to the place where your foot would strike coming down that step?

"A. Sixteen inches.

"Q. What did your foot strike when it went down 16 inches, what did it rest on?

"A. A steel base that had been left there, and I suppose that when they had the other steps in before they dig the 1st steps down.

"Q. Is there a sewer pipe there at the steps, and if so, tell the court about the size of that sewer?

"A. There is a 16 inch sewer I believe, and I stepped on the sewer with my left foot, with my right hand on the post, then I slipped and my next foot went on the base and I kindly broke my fall and caught the post with my other hand."

On cross-examination she testified:

"Q. Were you working at the Merit during the time the construction of the streets of Mayfield were going on in front of the Merit? Did you notice and observe the changing of the grade of the streets there?

"A. Yes, sir.

"Q. You knew that they had cut down the grade at this place considerably?

"A. Yes, sir.

"Q. There were no steps at this place where you stepped down?

"A. No, sir.

It is apparent from her testimony that appellee was familiar with the situation at the place where she was injured. It was broad daylight; she could and did see the height of the sidewalk above the street level, and appreciated the fact that she could negotiate the descent only by an effort to prevent falling. As suggested heretofore, she had never used this way before, but had at all times previously used other easier and less dangerous ways to reach the street from her residence, and in this in-

stance voluntarily chose the most dangerous way to reach the street level. Is she entitled to damages for the resulting injury? We think not.

In Dillon on Municipal Corporations (5th Ed.) sec. 1697, the rule is thus stated:

"The law does not require a municipal corporation to respond in damages for every injury that may be received on a public street. The corporation is not bound to have its streets or sidewalks so constructed as to secure absolute immunity from danger in using them; nor is it bound to employ the utmost care and exertion to that end. Its duty, generally stated, is only to use due and proper care to see that its sidewalks are reasonably safe for persons exercising ordinary care and prudence."

And in section 1698, same work, it is further stated:

"Adverting in this place to the subject in a general way, it may be stated that, if the person injured knew of the defect or obstruction, and ought reasonably to have avoided it by going outside or around it, and did not, he cannot recover."

We have held the fact that a pedestrian knows, generally, of the defect in a sidewalk, but momentarily forgets it, does not make his use thereof negligence per se (City of Carlisle v. Secrest, 75 S. W. 268, 25 Ky. Law Rep. 336); and, that one is not compelled to keep off a street because it is known to him to be in an unsafe condition (Town of Belleview v. England (Ky.) 118 S. W. 994); but we have never held that one may close his eyes to a patent defect in, or obstruction to, a street or sidewalk and take his chances, and then recover damages for resulting injury.

In the Town of Belleview v. England case, supra, we said:

"One is not compelled to keep off the street because it is known by him to be in an unsafe condition. If there are other ways, safer than the one he travels, he will be held to be negligent if he, with knowledge of the conditions, voluntarily assumes the more hazardous."

To the same effect are the cases of City of Covington v. Manwaring, 113 Ky. 592, 68 S. W. 625, 24 Ky. Law Rep. 423; Louisville Gas Co. v. Hammer, 106 S. W. 826, 32 Ky.

Law Rep. 631; City of Glasgow v. Crisp, 111 S. W. 279, 33 Ky. Law Rep. 766.

In the case of Moore v. City of Huntington, 31 W. Va. 849, 8 S. E. 515, it is said:

> "It is evident from the authorities, that a person, who uses a street or sidewalk, which, his observation prudently exercised would inform him was dangerous, takes the risk of such injuries, as may result to him from open and apparent defects, such as his observation ought to have detected and avoided."

The Supreme Court of Pennsylvania, in the case of Lerner v. City of Philadelphia, 221 Pa. 294, 70 A. 755, 21 L. R. A. (N. S.) 614, a case quite similar to this, expressed its view of the situation as presented by the facts in the case in this language:

> "We have gone very far in holding municipalities liable for injuries received in consequence of defective pavements, but never yet so far as to excuse the pedestrian using the pavements from the duty of exercising ordinary care. When one abandons the use of his natural senses for the time being, and chooses to walk over a pavement by faith exclusively, and is injured because of some defect in the pavement, he has only himself to blame. It is, of course, the duty of municipalities to see that the pavements along its streets are reasonably safe for public use, but they are not insurers of the safety of those using them. It is impracticable, if not impossible, to maintain these pavements in such condition as to make them entirely free at all times from possibility of accident to those using them. Irregularities in grade, unevenness in surface, sharp depressions at crossings, accidental displacements of brick or stone, and many other things which may or may not be defects, but yet sufficient in themselves to cause accident to the unwary, are so common and usual that it is the duty of the pedestrian to be observant of such fact, and not to walk blindly. If through no fault of his he is prevented from seeing the defect, obstruction or whatever it may be, which it was the duty of the municipality to have corrected, and injury results to him, he is entitled to claim compensation. When the accident occurs in broad daylight, in consequence of

764

an open and exposed defect in the sidewalk, the burden rests upon the party complaining to show conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it. If such conditions exist, there is excuse for walking by faith. When they do not exist, the law charges the party with failure to do what was required of him.''

And that is this case. The appellee, a mature woman, possessed of all her natural senses, in broad daylight, undertook to climb down from the sidewalk to the street level, a distance of 58 inches, over a place she had never used before, and by such action sustained the injury for which she claims compensation. In thus subjecting herself to danger, she failed to exercise ordinary care for her own safety, and was therefore guilty of contributory negligence. That being the case, the trial court should have instructed the jury to find for appellant.

Judgment reversed, and cause remanded.